**Khan v Garg**

2024 NY Slip Op 31418(U)

April 18, 2024

Supreme Court, New York County

Docket Number: Index No. 652334/2013

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

-------------------------------------------------------------------------------X

RAZA KHAN,

                                         Plaintiff,

                        - v -

VISHAL GARG, EDUCATION INVESTMENT FINANCE
CORPORATION, 1/0 CAPITAL LLC, and EMBARK
HOLDCO I, LLC,

                                         Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 652334/2013 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 030 035 039 |

**AMENDED DECISION +
ORDER ON MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 030) 1382, 1383, 1384, 1396, 1397, 1457, 1461, 1484, 1485, 1486, 1487, 1488, 1489, 1490, 1491, 1492, 1493, 1494, 1495, 1496, 1497, 1498, 1530, 1531, 1532, 1543, 1598, 1649

were read on this motion to/for                    PRECLUDE                    .

The following e-filed documents, listed by NYSCEF document number (Motion 035) 1418, 1419, 1420, 1421, 1422, 1423, 1424, 1434, 1436, 1438, 1472, 1476, 1524, 1542, 1600, 1651

were read on this motion to/for                    PRECLUDE                    .

The following e-filed documents, listed by NYSCEF document number (Motion 039) 1500, 1501, 1502, 1503, 1504, 1505, 1506, 1507, 1508, 1509, 1510, 1511, 1512, 1513, 1514, 1515, 1516, 1517, 1518, 1519, 1520, 1521, 1523, 1528, 1535, 1554, 1555, 1556, 1557, 1558, 1559, 1560, 1561, 1562, 1563, 1564, 1565, 1566, 1567, 1568, 1575, 1576, 1577, 1578, 1579, 1580, 1594, 1595, 1627

were read on this motion to/for        RENEW/REARGUE/RESETTLE/RECONSIDER [1]        .

Upon the foregoing documents, it is

On July 2, 2013, plaintiff Raza Khan initiated this action, individually and

derivatively, against his childhood friend defendant Vishal Garg, their company

Education Investment Finance Corporation (EIFC) (of which each party owns 50%), 1/0

---

[1] The court amends its April 12, 2024 Decision and Order based on the discussion on the record on April 15, 2024.  The parties' letters dated April 15, 2024 and April 16, 2024 were not considered.

652334/2013   KHAN, RAZA vs. GARG, VISHAL
Motion No.  030 035 039

Page 1 of 15

[* 1]

Capital, LLC (Garg's company),[2] and Embark Holdco I, LLC (Embark) (EIFC owns 25% of Embark.) (NYSCEF Doc. No. [NYSCEF] 1, Complaint; NYSCEF 316, August 10, 2016 Decision and Order at 1 [mot. seq. no. 010]; NYSCEF 1507, Organizational Chart.) Khan's derivative claims are on behalf of EIFC. (NYSCEF 1, Complaint.)

The remaining claims are: (I) corporate deadlock as to EIFC requesting that "one party ... be ordered to buy out the other" (NYSCEF 335, FAC ¶¶ 151-154); (II) breach of fiduciary duty of loyalty and good faith against Garg for (i) converting EIFC's funds; (ii) falsifying EIFC's financial records; (iii) failing to file EIFC's tax returns since 2009; (vi) "failing to assign the asset purchases of the Senior Secured Term Note to EIFC"; (viii) "using EIFC's funds to benefit MRU Lending"; (ix) "improperly seizing EIFC equipment on June 24, 2013"; and (xii) "amending EIFC's tax returns with false financial information" (*id.* ¶¶ 155-159); (III) conversion against Garg and Embark for "wrongfully transferr[ing] funds [or using funds] belong to EIFC and EIFC-related entities" (*id.* ¶¶ 160-168); (VII) conversion against Garg for transferring EIFC funds to another entity, MRU Lending (*id.* ¶¶ 187-190); (VIII) unjust enrichment against Garg for transferring

---

[2] 1/0 Capital, LLC is dismissed from this action. Plaintiff's first motion to amend the complaint to add 1/0 Capital LLC and Embark Holdco I, LLC was denied. (NYSCEF 168, June 29, 2014, Decision and Order [mot. seq. no. 005].) However, on February 2, 2017, on consent, plaintiff was permitted to amend the complaint to add 1/0 Capital LLC and Embark Holdco I LLC. (NYSCEF 335, First Amended Complaint [FAC]; NYSCEF 339, Order.) Plaintiff's motion 027 to add as defendants 1/0 Holdco LLC and 1/0 Capital Ltd. was denied. (NYSCEF 1180, Proposed Second Amended Complaint; NYSCEF 1346, January 16, 2023 Decision and Order at 13 [mot. seq. no. 027].) Plaintiff's motion to amend Count V for tortious interference against 1/0 Capital LLC by adding 1/0 Holdco LLC and 1/0 Capital Ltd. was denied. (*Id.*) Count V against 1/0 Capital LLC continued until April 13, 2023, when the court granted summary judgment dismissing Count V. (NYSCEF 1349, April 13, 2023 Decision and Order at 13 [mot. seq. no. 026]; *see also* NYSCEF 1598, August 15, 2023 tr 31:8-9 ["As Your Honor may recall, 1/0 Capital, I believe, was dismissed from the case"].)

[* 2]

funds belonging to EIFC (*id.* ¶¶ 191-195); and (IX) an accounting of EIFC's books and records. (*Id.* ¶¶ 196-201; *see also* NYSCEF 360, May 30, 2018 Decision and Order at 10-11 [decision on mot. seq. no. 012 to dismiss Amended Complaint dismissing Count IV against all defendants and Counts I, II, IV, V, VI, VII, VIII and IX against Embark]; NYSCEF 1349, April 13, 2023 Decision and Order at 13 [decision on mot. seq. no. 026 for summary judgment dismissing Count II (iv), (v), (vii), (x), (xi), (xiv), and (xv), Count V and Count VI].) Plaintiff seeks damages for Counts II, III, VII, and VIII. (NYSCEF 335, FAC at 31-33.) Defendants have counterclaims for breach of fiduciary duty, corporate waste and mismanagement, and conversion. (NYSCEF 334, June 9, 2017 First Amended Answer and Counterclaims ¶¶ 67-79.) The trial is scheduled to begin on May 6, 2024.[3]

In motion 039, plaintiff Raza Khan moves for an order (1) pursuant to CPLR 2221(e), "granting Plaintiff's motion for leave to renew his opposition to Defendants' Motion for Partial Summary Judgment dated December 31, 2020[4] ('Defendants' MSJ'); (2) pursuant to CPLR 5015(a), reversing Hon. Justice Jeffrey Oing's prior decision denying Plaintiff's Motion to Reject Settlements[5] (NYSCEF 316, [Mot Seq 010, August

---

[3] After trial in the related case *Embark Corp. v Kahn,* Index. No. 652801/2013, the complaint and counterclaims were dismissed. (NYSCEF 684, July 14, 2022 Trial Decision at 20.)

[4] In motion 026, defendants moved for summary judgment (1) dismissing plaintiff's fiduciary duty claims (Count II, Subcounts (iv), (v), (vii), (x), (xi), (xiv) and(xv), tortious interference claim (Count V), and claim for failure to execute corporate paperwork (Count IV); and (2) granting Garg's counterclaim for conversion (Count II). (NYSCEF 1116, OSC.)

[5] The following actions were settled: Education Investment Finance Corporation (EIFC) (on behalf of Activist Special Advisory Services, LLC [ASAS]) and Phoenix Real Estate Solutions Ltd. [PRES] in the arbitration captioned *Activist Special Advisory Services, LLC v Phoenix Real Estate Solutions*, Case No. 011400002627, pending before the American Arbitration Association; and (2) EIFC and Embark Corporation and Embark

**652334/2013  KHAN, RAZA vs. GARG, VISHAL**                                    **Page 3 of 15**
**Motion No.  030 035 039**

10, 2016 Decision]);" (3) "denying Defendants' MSJ seeking dismissal of sub-counts (iv), (v), (vii), (x), (xiv), (x), (xiv) and (xv) of Plaintiff's breach of fiduciary duty claims alleged in his First Amended Complaint." (NYSCEF 1500, OSC, Mot Seq 039; NYSCEF 1349, April 13, 2023, Decision granting summary judgment and dismissing Count II (iv), (v), (vii), (x), (xi), (xiv) and (xv), tortious interference claim (Count V), and claim for failure to execute corporate paperwork (Count VI).) With this motion, plaintiff seeks to vacate prior decisions, including a 2016 decision by Justice Oing. The issue here is whether PRES, Garg's company owns the IP allegedly purloined from EIFC.

In October 2014, EIFC and its subsidiary ASAS commenced an arbitration against PRES alleging misappropriation of EIFC's IP. (NYSCEF 316, August 10, 2016 Decision at 5-6.) Garg founded PRES in 2011. (*Id.* at 4.) EIFC and PRES entered into a contract pursuant to which EIFC's subsidiary ASAS performed due diligence and other services for PRES for which PRES paid EIFC a monthly fee. (*Id.*) Plaintiff alleges that in June 2013, the contract was terminated and the next day, the ASAS services were provided by Phoenix Advisors and Managers, Ltd. (PAM), another Garg owned entity. (*Id.*)

"In June 2014, EIFC commenced an action … against Embark … arising from Embark's alleged failure to pay EIFC for certain services and for invoices paid on Embark's behalf by EIFC." (*Id.* at 5.)

In 2014, a subsidiary of Embark commenced an action against Embark for summary judgment in lieu of complaint for nonpayment of a note. (*Id.*)

---

Holdco I, LLC, in the matters captioned *EIFC v Embark Corp.*, Index No. 155818/2014, and *Embark Holdco I, LLC v Embark Corp., et al.*, Index No. 652552/14.

**652334/2013  KHAN, RAZA vs. GARG, VISHAL**                                        **Page 4 of 15**
**Motion No.  030 035 039**

[* 4]

On March 4, 2015, Justice Oing removed Khan and appointed Garg to lead EIFC and Embark. (NYSCEF 248, tr at 47-52.)

On March 13, 2015, the Embark actions were settled. (NYSCEF 316, Decision at 6.)

Justice Oing approved the Activist settlement on August 10, 2016. (NYSCEF 316, Decision at 12.)

"A motion for leave to renew . . . shall be based upon new facts not offered on the prior motion that would change the prior determination . . . and shall contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [2], [3]). Plaintiff certainly has justification for not offering facts that did not exist at the time for the motions. However, plaintiff's motion is denied because the new facts presented do not change the prior determination.

Plaintiff asserts that Garg, and others related to Garg, disclosed in a 2018 federal action (Trustee Action),[6] in which PRES seeks payment of unpaid invoices, that PRES owns the IP which Garg denied owning in this case.

In this action on plaintiff's motion to reject the settlements, Garg defended the Activist settlement and denied that PRES owned the allegedly purloined IP. (NYSCEF 1509, MOL at 3 ["Phoenix has pressed the position in the arbitration proceeding and in settlement discussions that regardless of the merits of the dispute it is the wrong party named and cannot be liable because the intellectual property that Raza Khan claims Phoenix misappropriated was neither controlled nor owned by Phoenix at any time, but

---

[6] The "Trustee Action" herein refers to the *U.S. Bank National Association v Triaxx Asset Management LLC et. al.*, Case No. 1:18-cv-04044 (BCM), filed in the United States District Court of the Southern District of New York.

652334/2013  KHAN, RAZA vs. GARG, VISHAL
Motion No. 030 035 039

Page 5 of 15

instead was controlled and owned by a consultant for Phoenix."]  As plaintiff's papers demonstrate, Garg has consistently maintained that the disputed IP does not belong to PRES.  (NYSCEF 1509, EIFC's Memo of Law in Opposition to Khan's Motion to Reject Settlements on Mot Seq 010 at 11-12; NYSCEF 275, Khan's Memo of Law to Reject Settlements on Mot Seq 010 at 35; NYSCEF 1168, Defendants' MOL in Support of Partial Summary Judgment (Mot Seq 026) fn 8 at 29.)

Plaintiff's motion is denied.  First, Justice Oing's decision is not based on the ownership of the IP.  (NYSCEF 316, August 10, 2016 Decision.)  Likewise, this court's decision granting defendant's motion for summary judgment is not based on the ownership of the IP.  (NYSCEF 1349, April 13, 2023 Decision.)[7]

The court rejects plaintiff's "evidence" of PRES's ownership of the IP.  The Legal and Analytical Consulting Services Agreement[8] (Consulting Agreement) between PRES and Phoenix concerning work product,[9] is irrelevant to the ownership of the IP at issue

---

[7] The court dismissed Breach of Fiduciary Duty (iv) and (v) because plaintiff's assertion of theft of IP was insufficient.  Plaintiff fails to identify the stolen IP.  (NYSCEF 1349, April 13, 2023 Summary Judgment Decision at 9-10.)  This decision is not based on anything Garg said or did.  Rather, it is based on plaintiff's failure to prove his claim.

[8] Likewise, alone without more, the Consulting Agreement is inconclusive as to whether the IP addressed therein is the same as the IP allegedly purloined from EIFC.  Rather, this record would suggest that Tang and Jonsson invested significant time in creating something new.

[9] It states: "All inventions, discoveries, trade secrets, confidential information, proprietary information, software, databases, tangible and intangible works, and all rights therein, which directly or indirectly relates to the analytical services provided by [PAM] hereunder (collectively, "Work Product"), created, made conceived, authored, reduced to practice or developed by [PAM] personnel shall, in all cases, be owned jointly by [PAM] and [PRES]. In furtherance of the foregoing, [PRES] and [PAM] shall cooperate in any manner requested by the other in obtaining, protecting and asserting any and all rights in and to the Work Product."  (NYSCEF 1511, ¶ 7).  PAM is Phoenix Advisors and Mangers Ltd., an entity related to Garg.  Under the agreement, PRES engages PAM as a consultant to "provide to [PRES] and to its clients, as advised by [PRES] analytical services with respect to legal and data analysis of certain CDO securities for general

652334/2013   KHAN, RAZA vs. GARG, VISHAL                                          Page 6 of 15
Motion No.  030 035 039

[* 6]                                                                 6 of 15

in this case as between Jonsson and PRES. (NYSCEF 1511, July 1, 2013 Legal and Analytical Consulting Service Agreement ¶7.) Further, plaintiff's reliance on the Trial Declaration of Nicholas J. Calamari, General Counsel at 1/0 Capital LLC until December 2020 and who provided services to PRES, is misplaced. His statement that "PRES, working with subcontractors including PAM, provided proprietary technology and analysis of certain of the residential mortgage-backed securities ('RMBS') held by the Triaxx CDOs," is equivocal as to who owns the proprietary technology and is not inconsistent with Garg's position that PRES does not own the IP. (NYSCEF 1518, Calamari Declaration ¶ 10.) Indeed, the statement itself that PRES "provided proprietary technology" working with subcontractors, is consistent with statements made in this case. (*Id*.) Plaintiff's reliance on Calamari's statement as "evidence" is a clear distortion which undermines plaintiff's argument. Likewise, plaintiff's repeated insertion of the bolded term "**its own**" "in its papers, without quotes since it is not a quote from defendants, does not make it so. (NYSCEF 1556, Plaintiff's MOL at 6, 11.) Finally, while Jonsson did not testify in the Trustee Action as to ownership of the IP, he submitted an affidavit in this action wherein he declares that he is creator and owner of the IP that Activist used pursuant to a license agreement. (NYSCEF 989, Jonsson April 5, 2019 aff ¶¶ 7, 15, 17.) Nothing plaintiff has submitted effectively contradicts Jonsson's statement.

---

portfolio management, advisory and trading purposes as requested by [PRES]. The manner and means by which [PAM] chooses to perform the Services are in [PAM's] sole discretion and control. [PAM] shall perform the Services in accordance with applicable professional standards with all due care, skill and ability." (¶ 2.) The agreement is not signed by Tang or Jonsson.

652334/2013 KHAN, RAZA vs. GARG, VISHAL
Motion No. 030 035 039

Page 7 of 15

7 of 15

Plaintiff also relies on PRES's Proposed Findings of Fact and Conclusions of

Law (PFFCL) in the Trustee Action as evidence of defendants' "admission" that PRES

owns the IP:

> "In March 2011, PRES began to analyze the hundreds of thousands of loans underlying the CDOs' RMBS collateral to identify evidence of wrongdoing by originators, servicers, and trustees. (Tang ¶¶ 30-33, 38, 42-45; Jonsson ¶¶ 18-20, 23, 26-31; Tr. 723:8-14.) PRES initially performed this analysis manually, on a loan-by-loan basis. (Tang ¶¶ 38, 42; Jonsson ¶¶ 24, 26.) To do the work at scale, Tang and Jonsson built a unique database of loan level data for the Triaxx CDOs' RMBS collateral. (Tang ¶¶ 34-37, Jonsson ¶¶ 19-22.) Such a database did not exist anywhere in the market. (Tang ¶ 34, Jonsson ¶ 20.) PRES also built from scratch advanced proprietary algorithms to analyze the data. (Tang ¶¶ 37-41, 46; Jonsson ¶¶ 23- 26, 32; Tr. 846:8-847:14.) The database and algorithms were time-consuming and costly to build. (Tang ¶¶ 36, 41; Jonsson ¶ 22; Tr. 847:3-14.) Tang estimated PRES's cost to build the database and algorithms was $10 to $20 million. (Tang ¶ 41; Tr. 848:2-22.)"

(NYSCEF 1510, PRES's PFFCL ¶17.) PRES submitted the PFFCL to Judge Moses in

the Trustee action in support of its request for payment of its invoices. However,

Ownership of IP was not the issue at the hearing in the Trustee Action. Plaintiff's

snippet is insufficient evidence of ownership. First, the court cannot confirm many of

the unquoted statements in ¶17. Plaintiff provided a transcript to the court from the

Trustee Action which ends at page 825 (NYSCEF 1506), but the quotes in ¶17 are from

pages 846-848. Plaintiff failed to provide the Tang Declaration so the court cannot read

Tang's actual statements.

The court reviewed the Declaration of Sigurgeir Jonsson which is quoted in ¶17

and finds that plaintiff's snippet[10] omits context important to this proceeding but not

---

[10] The court appreciates that plaintiff place great weight on the fact that defendants submitted this snippet in the Trustee Action, but that does not stop plaintiff from connecting it to the record and supporting that which it is relying on. The snippet itself is not enough.

652334/2013   KHAN, RAZA vs. GARG, VISHAL
Motion No. 030 035 039

Page 8 of 15

important to the Trustee Action. For example, paragraphs 11-18 of Jonsson's Declaration explain how Tang and Jonsson came to be working to find and analyze defective loans in RMBS trusts. (NYSCEF 1514, Jonsson Declaration.) Jonsson explains their search leading to the statement that "Tang and Jonsson built a unique database" using the DataQuick database and adding other property and borrower information and details the circumstances under which they worked to do so. (*Id.* ¶¶ 19-22.) Likewise, the statements "PRES paid to acquire access to DataQuick's database" (*Id.* ¶22), while "Dr Tang and [Jonsson] developed the algorithm ourselves" do not preclude the possibility that Tan and Jonsson provided that work for the benefit of PAM which was engaged by PRES. (*Id.* ¶24.) It is clear from the declaration that Jonsson was working for ARAM Global which was engaged by PRES. (¶¶13-14; see also NYSCEF 1506 tr 718:2-723:7.) Likewise, the court cannot infer Jonsson's relationship with PAM from Calamari's testimony that Jonsson was "at" PAM and Jonsson sent invoices to the trustee. (NYSCEF 1506, tr 11-13.) Meanwhile, plaintiff insists that Tang and Jonsson worked for EIFC. (NYSCEF 275, Khan's Memo of Law on Mot Seq 010 at 35.) Finally, the statement "PRES also built from scratch advanced proprietary algorithms to analyze the data. (Tang ¶¶ 37-41, 46; Jonsson ¶¶ 23- 26, 32; Tr. 846:8-847:14)" is equivocal as to whether PRES's employees built it or it used independent contractors or collaborated with others. Likewise, Tang's testimony is equivocal: "Q: In your declaration you stated from 2011 to 2018, you performed work on behalf of [PRES]? A: Yes." Without Tang's Declaration, it is unclear for whom Tang actually worked, if at all, and in what capacity; he could have worked as an independent contractor. Further, from Jonsson's Declaration and the portion of the transcript

652334/2013   KHAN, RAZA vs. GARG, VISHAL
Motion No.  030 035 039

Page 9 of 15

provided, it appears that PRES, ARAM, Tang and Jonsson were working collaboratively, but the ownership of the work product between them is not addressed as it was not the issue in the Trustee Action. (NYSCEF 1514, Jonsson Declaration ¶¶11-14, 18.)

Plaintiff has not satisfied his burden to show that PRES owned the IP. It is not the court's burden to search the record to connect the dots where plaintiff has failed to do so. Motion 039 is denied.

In motion 030, defendants move for an order precluding plaintiff from raising evidence, argument or theories at trial related to the following:

1. The facts and issues that were alleged and settled in Activist Special Advisory Services, LLC v. Phoenix Real Estate Solutions (the "PRESL Arbitration"), Case No. 011400002627, American Arbitration Proceeding.
2. Documents obtained and used in the PRESL Arbitration.
3. Documents obtained and used in Embark Holdco I, LLC v. Embark Corp., et al., Index No. 652552/2014.
4. Any arguments that the settlements reached in the above actions were contrary to the interests of EIFC and Khan.
5. Any argument that Garg subverted the PRESL Arbitration by failing to produce documents.
6. Any evidence relating to employment agreements executed by Mingsung Tang and Ziggy Jonsson.
7. Any argument that Garg hired Tang and Jonsson to work for Defendant 1/0 Capital and steal or destroy intellectual property belonging to EIFC.
8. Any argument that Garg and 1/0 Capital intentionally induced PRES to terminate its contract with ASAS and to divert the contract to 1/0 Capital.
9. Any argument that Better Mortgage or Garg utilized EIFC intellectual property and/or data at Better Mortgage.
10. Any argument that Better Mortgage was funded with money that belonged to, or was owed to, Kahn or EIFC.
11. Any argument that Garg and 1/0 Capital tortiously interfered with Khan or EIFC's prospective business relations with Better or Better's predecessor, Avex.
12. Any argument that Garg (i) misappropriated EIFC proprietary information, clients, relationships or business opportunities or (ii) set up competing businesses by stealing EIFC's core business and misappropriating its proprietary information, business opportunities or clients.

652334/2013  KHAN, RAZA vs. GARG, VISHAL
Motion No.  030 035 039

Page 10 of 15

13. Any argument that Garg converted distributions that Phoenix Holdco allegedly owed to Khan.
14. Any testimony at trial from Peter Vinella regarding misappropriation of EIFC intellectual property; and
15. Certain damages theories asserted by J. Duross O'Bryan, CPA. (NYSCEF 1382, OSC [mot. seq. no. 030].)

Defendants' motion is denied as to **number 2** above. Plaintiff may use any documents produced by defendants. Plaintiff need not produce documents back to defendants. However, any documents in plaintiff's possession, but not in defendants' possession, and not produced to defendants may not be used at trial.

Defendants' motion is denied as to **number 3** above because Garg's alleged failure to assign the Senior Secured Term Note to EIFC was carved out of paragraph 7 of the Embark settlement. (NYSCEF 1495, Confidential Settlement Agreement & Release ¶ 7.)

Defendants' motion is granted as to **numbers 4, 11 and 13** above which are not addressed by plaintiff in his opposition.

Defendants' motion is granted as to **number 5** above because whether Garg subverted the arbitration, or not, is not relevant to whether Khan's initiation of the arbitration was frivolous.

Defendants' motion is granted as to **numbers 9 and 14** above concerning Garg's alleged use of EIFC's intellectual property and Vinella's opinion on Garg's alleged misappropriation of EIFC's intellectual property because the court dismissed those claims. Specifically, plaintiff now asserts here that defendants improperly seized EIFC's equipment on June 24, 2013 where EIFC's intellectual property resided which was used by Garg at Better Mortgage. However, the fiduciary duty claim subcount (xv) for "misappropriat[ion of ] EIFC's intellectual and other property

652334/2013   KHAN, RAZA vs. GARG, VISHAL
Motion No. 030 035 039

Page 11 of 15

[* 11]

and assets" was alleged in the arbitration and settled, and thus, dismissed. (NYSCEF 1349, April 2023 Decision and Order at 8/13.)  Further, having failed to establish facts on summary judgment that Garg used the intellectual property, data, and proprietary information to pitch investors for Better Mortgage, plaintiff cannot assert it at trial.  The court dismissed plaintiff's misappropriation claim as speculative, based on Vinella's opinion which had no factual basis.  (*Id*. at 10/13.)[11]

Defendants' motion is denied as to **number 10** above because whether Garg funded Better Mortgage with EIFC funds or used funds owed to Kahn to fund Better Mortgage is relevant to the breach of fiduciary duty claim (i) for converting funds to make asset purchases.

Defendants' motion is denied as to **number 15** above because O'Bryan's damages testimony regarding CDO analytics and lost prospective customers is relevant to plaintiff's breach of fiduciary duty claims for (i) converting EIFC's funds, (ii) falsifying EIFC's financial records, and (iii) failing to file EIFC's tax returns since 2009.  Plaintiff intends to present evidence at trial that "these particular breaches of Garg's fiduciary duties, individually and collectively, led to the attrition of EIFC's employees and customers base, and ultimately the complete destruction of EIFC's enterprise value."  (NYSCEF 1532, MOL at 16; NYSCEF 1489, O'Bryan Report ¶ 39.)

Defendants' motion is denied as to **number 15** above because O'Bryan will testify to damages arising from the alleged breach of fiduciary duty by (i) converting

---

[11] NYSCEF pagination.

652334/2013   KHAN, RAZA vs. GARG, VISHAL
Motion No.  030 035 039

Page 12 of 15

EIFC's funds and (ix) improperly seizing EIFC's equipment and Garg's alleged conversion of EIFC's funds to make asset purchases.

Defendants cannot preclude evidence necessary for plaintiff to defend against defendants' counterclaims which are:

Count I, Breach of Fiduciary duty: for "(i) removing Garg's access to EIFC's operations and finances prior to commencing this litigation; (ii) knowingly causing false and misleading tax returns to be filed on behalf of EIFC; (iii) knowingly directing the filing of frivolous litigation on behalf of EIFC and expending EIFC funds and resources to pursue these claims as a result of a personal vendetta against Garg; (iv) refusing, unreasonably, to sign corporate documents prepared by EIFC's counsel, which caused the filing of EIFC tax returns and the transfer of certain assets to EIFC to be delayed; (v) refusing to return money to EIFC that he borrowed for personal investments; and (vi) failing to satisfy outstanding payments due to vendors that provided critical services to EIFC." (NYSCEF 334, First Amended Counterclaims ¶ 69.)

Count II, Conversion: "Khan improperly exercised unauthorized dominion over monies belonging to EIFC and improperly prohibited Garg, who at all relevant times remained a 50% shareholder, from having any access to the same or records regarding the same. Khan did this by, *inter alia*, using EIFC funds to fund multiple lawsuits against and investigations into wrongdoing by Garg in an effort to harm his estranged friend and business-partner. (*Id.* ¶ 72.)

Count III, Corporate Waste and Mismanagement: "Khan is a director of EIFC and is required to act in EIFC's best interest. Khan violated that obligation by depleting EIFC of the majority of cash it held in its company bank account and failing to pay vendor costs. Khan also violated that obligation when he unilaterally authorized excessive spending of EIFC's funds, including a payment of at least $400,000 to Paul Hastings to conduct an 'investigation' in furtherance of his personal vendetta against Garg. The payment to Paul Hastings was the single largest expenditure made from EIFC funds in 2013 and represented more than 25% of EIFC's 2012 operating profit. Khan did not seek approval or input from Garg or EIFC's counsel prior to spending those funds. He further violated that obligation when he retained two different law firms and knowingly caused them to file litigations purportedly on behalf of EIFC, who was left funding the actions. One of these was summarily dismissed and another was stayed by the Plaintiff two weeks after the claim was brought. Khan did not seek approval from Garg prior to making these expenditures because his real aim was to attack Garg personally by suing entities that Garg either owned or was affiliated with while hiding behind EIFC." (*Id.* ¶ 76.)

652334/2013   KHAN, RAZA vs. GARG, VISHAL
Motion No.  030 035 039

Page 13 of 15

As long as defendants proceed with their claims that Kahn's litigations were frivolous, the jury must hear evidence about the litigations to determine whether they were frivolous or not. Accordingly, defendants' motion is denied as to **numbers 1, 2, 3, 6, 7, 8, 10, 12, and 15** and granted as to **4, 5, 9, 11, 13, and 14**.

In motion sequence 035, plaintiff moves to exclude some of the opinion testimony of defendants' expert Greig Taylor. Plaintiff's challenge is limited to Taylor's September 11, 2020 report related to the cost of EIFC's litigations against Garg and his entities. Plaintiff's motion does not address Taylor's opinions on the amount Khan owes EIFC for capital contributions or the impact on EIFC's taxes resulting from the challenged litigations, nor Taylor's October 23, 2020 rebuttal report critiquing plaintiff expert's damages analysis. Plaintiff's motion is denied because Taylor does not need a law degree to evaluate legal costs and whether they are objectively within the scope of the stated purpose of the representation, as reflected in the retainer agreement and other documents. Contrary to plaintiff's objection, Taylor's testimony is relevant and the jury may find it helpful; it is up to the jury to decide whether to give it any weight or not. Taylor's firm specializes in "the identification, quantification and valuation of damages, lost profits, business enterprise value and wasted costs in matters involving breach of contract and contract terminations." (NYSCCEF 1424 Taylor Report ¶ 6.) However, Taylor is not qualified to opine on whether the litigation benefitted EIFC or not. Likewise, Taylor cannot opine on Khan's motive. (*See Cohen v Am. Biltrite Inc.*, 62 Misc 3d 861, 683 [Sup Ct, NY County 2018] [expert "may not testify regarding either entity's reasoning or motivations, of which he has no personal knowledge"].)

Accordingly, it is

652334/2013  KHAN, RAZA vs. GARG, VISHAL
Motion No. 030 035 039

Page 14 of 15

14 of 15

ORDERED that motion sequence 030 is granted, in part, to the extent that the

arguments related to the following are precluded from being raised at trial:

4. Any arguments that the settlements reached in the above actions were contrary to the interests of EIFC and Khan.

5. Any argument that Garg subverted the PRESL Arbitration by failing to produce documents.

9. Any argument that Better Mortgage or Garg utilized EIFC intellectual property and/or data at Better Mortgage.

11. Any argument that Garg and 1/0 Capital tortiously interfered with Khan or EIFC's prospective business relations with Better or Better's predecessor, Avex.

13. Any argument that Garg converted distributions that Phoenix Holdco allegedly owed to Khan.

14. Any testimony at trial from Peter Vinella regarding misappropriation of EIFC intellectual property; and it is further

ORDERED that the balance of motion sequence 030 is denied; and it is further

ORDERED that motion sequence 035 is denied; and it is further

ORDERED that motion 039 is denied.


|  | 20240418202905AMASLEY372632FEEC7A482A91BF1D95C4DF224F |
| :---: | :---: |
| __4/18/2024__ | |
| DATE | ANDREA MASLEY, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
| :--- | :--- | :--- | :--- | :--- | :--- | :--- | :--- | :--- |
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

652334/2013   KHAN, RAZA vs. GARG, VISHAL
Motion No.  030 035 039

Page 15 of 15

15 of 15